IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSE BONILLA FIALLOS**, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:20-cv-03577-JMC |
| **HAMZAH SLAUGHTER HOUSE, LLC et al**, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \*

**MEMORANDUM OPINION REGARDING**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, Jose Bonilla Fiallos, brings his case against Defendants, Hamzah Slaughter House, LLC and its owner, Imad Rababeh, under a combination of federal and state statutes. Specifically, Plaintiff alleges violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), its Maryland counterpart, the Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMPL. § 3-401, *et seq.* ("MWHL"), and the Maryland Wage Payment and Collection Law, MD. CODE ANN., LAB. & EMPL. § 3-501, *et seq.* ("MWPCL"). On September 6, 2022, this Court conducted a bench trial. At its conclusion, the Court allowed the parties to submit any proposed findings of fact and conclusions of law by October 14, 2022, and those have now been received. (ECF Nos. 67 & 68). As set forth more fully below, the Court finds in favor of Plaintiff and will enter a damage award as indicated. The Court will also award attorneys fees and costs once Defendants have an opportunity to respond to Plaintiff's fee petition included with Plaintiff's filing. (ECF No. 67). Defendants shall do so within fifteen (15) days of the date of this Opinion and Order.

I.   **FINDINGS OF FACT**

The Court, in its role as factfinder, and in compliance with Rule 52 of the Federal Rules of Civil Procedure, makes the following findings of fact. In reaching these findings, where relevant to the number of hours Plaintiff worked, the Court has taken into account the articulation of Plaintiff's burden as set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), *superseded by statute on other grounds as stated in Carter v. Pan. Canal Co.*, 463 F.2d 1289, 1293–94 (D.C. Cir. 1972).

1. As part of this Court's Pre-Trial Order (ECF No. 61), the parties included a set of facts to which they stipulated and which the Court shall adopt as part of its findings of fact:

   a. Defendants operate an Islamic slaughterhouse in Williamsport, Maryland, and that, at all times noted in their stipulations, Defendant Imad Rababeh ("Mr. Rababeh") was the owner of Defendant Hamzah Slaughter House, LLC ("Hamzah"), which engages in commerce and, from 2017 to 2020, made at least $500,000.00 in annual gross sales.

   b. Plaintiff Jose Bonilla Fiallos, known as "Danny" to the Defendants, was employed as a "skinner" on the slaughterhouse "kill floor" at Hamzah.

   c. Plaintiff's term of employment was for the periods of, at least, December 10, 2017, to March 25, 2018, and from November 1, 2019, to October 11, 2020.

   d. From December 10, 2017, to March 25, 2018 (the "First Term"), Plaintiff was paid $120.00 per day, and that from November 1, 2019, to October 11, 2020 (the "Second Term"), Plaintiff was paid $150.00 per day.

2. The parties also do not dispute that the FLSA, MWHL, and MWPCL apply to Hamzah's operations, and Plaintiff is a covered employee for purposes of those laws. The parties, of course, dispute whether Plaintiff worked any overtime hours so as to be entitled to an award of overtime pay.

3. Plaintiff worked for Hamzah for a total of 64 weeks and 2 days during two different "terms" of employment, as noted above. For his 15-week First Term (12/10/17 to 3/25/18), Plaintiff was paid a flat rate of $120/day for a total of $600/week. The Plaintiff's weekly pay was intended to compensate him for up to 40 hours of work per week. Therefore, his regular hourly rate of pay for the First Term was $15.00 per hour ($600.00/40 hours = $15.00).

4. Plaintiff's Second Term lasted 49 weeks and 2 days. During his Second Term, Plaintiff was paid a flat rate of $150/day for a total of $750 for up to 40 hours of work per week, but Plaintiff was also paid an additional $100 for additional weekend work. As explained in more detail below, the Court finds that Plaintiff regularly performed 3 hours of additional weekend work during his Second Term. Dividing Plaintiff's total compensation by the total expected number of working hours ($850/43 hours), Plaintiff's regular hourly rate of pay for the Second Term was $19.76 per hour.

5. Based on the above, Plaintiff's overtime rate for the First Term was $22.50 ($15 x 1.5), and his overtime rate for the Second Term was $29.64 ($19.76 x 1.5).

6. During both terms, Hamzah conducted "regulated operations" that, per its U.S. Department of Agriculture ("USDA") Grant of Inspection and the Washington County Health Department, could only take place in the presence of a USDA inspector on premises, between the hours of 6:00 am until 2:30 pm, Monday–Friday, with a 30-minute lunch break. (Tr. 65, 102).[1]

---

[1] Citations to "Tr." Refers to the Official Transcript (ECF No. 66) of the trial held on September 6, 2022. The Court cites to specific page numbers in the Official Transcript.

7. Hamzah conducted preliminary cleaning operations each day from 5:30 am to 6:00 am before the USDA inspector arrived. (Tr. 62).

8. Hamzah also conducted "custom operations" that took place outside of the 6:00 am to 2:30 pm period (usually 3:30 pm to 5:00 pm) and did not require the presence of an inspector, but those custom operations were a very small part of the business and usually required only one employee (not Plaintiff). (Tr. 116–17).

9. Hamzah also has delivery trucks that made customer deliveries during both of Plaintiff's terms, Monday to Friday, usually leaving mid-morning and returning by approximately 4:00 pm or 4:30 pm. (Tr. 84, 128).

10. In addition to the above, Hamzah had workers who cleaned out animal stalls on the weekends. (Tr. 43, 52).

11. Plaintiff was not a particularly strong witness, as his testimony was somewhat combative and sometimes at odds with even the agreed-to facts stipulated by the parties and prior admissions. Plaintiff presented no evidence other than his own testimony to establish the number of hours he worked. That said, Defendants did not keep records of the hours Plaintiff worked. Defendants maintained some records indicating particular days (not hours) that Plaintiff worked and amounts he was paid per week, but these records were incomplete. (Plaintiff's Ex. 1).

12. Defendants contend that Plaintiff worked on a fixed schedule coinciding with regulated operations of no more than 8 hours per day (6:00 am to 2:30 pm, with a 30-minute lunchbreak), excusing them of the need to keep track of Plaintiff's hours pursuant to FLSA regulations. However, there was testimony both from Plaintiff and Defendants that Plaintiff's schedule varied from the allegedly fixed schedule, yet Defendants did not keep track of these "exception" hours as required by law. Mr. Rababeh testified that Plaintiff was paid a fixed weekly

rate no matter how many hours he worked, and Mr. Rababeh conceded that Plaintiff probably worked more than 40 hours per week during some weeks. (Tr. 42–43; *see also* Tr. 9–21 (testimony from Plaintiff that he worked more than 40 hours/week); Tr. 64 (testimony from Sabrina "Maria" Moten that Plaintiff worked less than 40 hours/week "some" weeks); Tr. 104 (testimony from S. Rababeh that Plaintiff worked less than 40 hours/week)).

13. There is no dispute that Plaintiff worked (at least) in Hamzah's regulated operations. There is no testimony or evidence that those regulated operations extended beyond the 6:00 am to 2:30 pm time period (with a 30-minute lunch breach) during the relevant period. Further, there is evidence to the contrary, beyond simply the testimony from Defense witnesses. Specifically, those operations could only take place when a USDA inspector was on-site. Such inspectors were generally on-site for no more than 8 working hours per weekday, 6:00 am to 2:30 pm, with a 30-minute lunch break. If Hamzah's operations extended beyond 2:30 pm, then Hamzah had to pay the USDA overtime for its inspectors. Defendants introduced records from USDA (Defense Ex. 1) verifying that no over time was paid during the relevant time period, with the exception of approximately 2 hours during 2020. (Tr. 70–73, 105–09).

14. The Defense introduced testimony asserting that there were times when regulated operations ended earlier than the stated schedule of 6:00 am to 2:30 pm. However, such testimony varied as to how often it occurred (as described in Finding of Fact 12 above) and, as noted, Defendants did not keep records of the actual hours Plaintiff worked.

15. The Court also notes that there were likely records Defendants were required to keep by the USDA that were available to Defendants that could have potentially corroborated, at least circumstantially, the testimony that operations sometimes ended early, but such records were not produced in the case. (Tr. 118–19).

16. Given Findings of Fact 14 and 15, the Court does not find that Defendants introduced sufficient evidence to negate the reasonable inference from Plaintiff's testimony that he typically worked (at least) in regulated operations five days per week from 6:00 am to 2:30 pm (with a 30-minute lunch break) during his First and Second Terms.

17. Plaintiff testified at trial that he also worked every day in the pre-slaughter cleaning operations beginning at 5:30 am until the USDA inspector arrived at 6:00 am. The Court, however, does not find that testimony persuasive. As described, the Court did not find Plaintiff to be a particularly convincing witness. Additionally, Hamzah's former plant manager during the relevant period, Sabrina "Maria" Moten, whom the Court did find to be credible based on her recall of detail, overall demeanor, and lack of current connection to Defendants, testified that she and another employee (not Plaintiff) were the only ones to come in at 5:30 am for cleaning operations and that everyone else came at 6:00 am. (Tr. 62, 78). Accordingly, the Court finds that Defendants have negated the reasonableness of the inference to be drawn from Plaintiff's testimony that otherwise applies where, as here, an employer fails to maintain appropriate records of hours worked. The Court will therefore not add 30 minutes per day to the 8-hour regulated operations shifts Plaintiff otherwise worked.

18. The parties dispute whether Plaintiff worked in custom operations, although Plaintiff's testimony on this issue was sparse. (Tr. 32). Defense testimony on this issue was significantly more persuasive, including not just testimony from Mr. Rababeh and his daughter, but also from former plant manager Sabrina "Maria" Moten. (Tr. 57, 66, 110). Accordingly, the Court finds that Plaintiff did not work in custom operations, as Defendants' evidence negated the reasonableness of the inference to be drawn from Plaintiff's testimony. Therefore, the Court will

not add additional time to Plaintiff's 8-hour shift to account for any work by Plaintiff in custom operations.

19. The parties do not dispute that Plaintiff did work cleaning stalls during his Second Term. Plaintiff provided no evidence or testimony on this issue at all, but Mr. Rababeh, his daughter, and Ms. Moten testified consistently that Plaintiff worked somewhere between 2–4 hours one weekend day but not both (i.e., Saturday or Sunday). (Tr. 43, 52, 73, 76, 110). Accordingly, the Court will add 3 hours/week to the 40 hours/week that Plaintiff was already working in regulated operations for those 49 weeks and 2 days occurring November 1, 2019, to October 11, 2020 for a total of 150 hours of overtime (49 x 3 hours = 147 plus an additional three hours to account for the additional two days that fell on a weekend).

20. The Court finds that Plaintiff worked additional hours assisting with deliveries on some occasions. Although Plaintiff testified that he assisted with deliveries every weekday, working until 7:30 pm or 8:00 pm, this was inconsistent with his response to request for admissions (Defense Ex. 8b) indicating that his workday ended at 4:30 pm. Additionally, Defendants produced testimony from multiple witnesses negating the reasonableness of some of the inferences to be drawn from Plaintiff's testimony. This includes the testimony of the Defense witnesses that the trucks would return by 3:00 pm–4:00 pm/4:30 pm, not 7:30 pm or 8:00 pm. This is also consistent with the location of Plaintiff's customers, a list that has not undergone a lot of change. Thus, the Court finds that such assistance, when provided, amounted to no more than 2 hours per day beyond Plaintiff's 8-hour workday on those occasions when he assisted with deliveries.

21. In terms of how often Plaintiff assisted with deliveries, the evidence is mixed. As noted above, Plaintiff testified at trial that he assisted with deliveries every day until 7:30 pm or 8:00 pm, but that is inconsistent with his prior response to request for admission where he admitted

7

he stopped working at 4:30 pm.  (Def. Ex. 8b).  Additionally, there was no testimony to contradict Defendants' testimony that trucks usually left around 9:00 am or 9:30 am.  For Plaintiff to have assisted with deliveries every day, he would have left Hamzah shortly after starting his work in slaughter operations, which is what the evidence consistently showed was his main job.  Thus, the Court finds that Defendants have negated the reasonable inference that could otherwise be drawn from Plaintiff's testimony that he assisted with deliveries *every day*.  As explained immediately below however, Defendants have not negated the reasonable inference that there were *occasions* when Plaintiff did assist with deliveries.

22. All defense witnesses testified that there were some occasions when Plaintiff did assist with deliveries.  Defendant Rababeh testified that Plaintiff worked on the delivery truck "very little time" and "not a lot." (Tr. 42–43).  Ms. Moten testified that Plaintiff did "not always" assist with deliveries.  (Tr. 78).  Mr. Fahs, one of the delivery drivers still employed by Defendants, testified that Plaintiff assisted with deliveries "a couple times."  (Tr. 85).  Ms. Suzan Rababeh acknowledged that Plaintiff sometimes assisted with deliveries, but such assistance was "very, very scarce."  (Tr. 109).

23. Additionally, both Mr. Fahs and Ms. Rababeh acknowledged that drivers kept records that would show (or were supposed to show) what personnel were on each delivery truck. (Tr. 91–92, 120–22).  Such records were not produced in discovery or at trial.

24. Thus, the Court finds that Defendants have not completely negated the reasonable inference that Plaintiff on some occasions assisted with deliveries, and the Court further finds that Defendants' failure to produce records in their possession that might well establish how often Plaintiff did assist with deliveries strongly suggests that Plaintiff provided such assistance more often that Defendants assert.

25. Given all of the above, the Court finds that a just and reasonable inference is that Plaintiff assisted with deliveries one day every other week during the First and Second terms of his tenure for an additional two hours beyond his 8-hour shift.

26. Collectively, the Court finds that Plaintiff worked 64 hours of overtime assisting with deliveries (32 weeks x 2 hours/week) during his 64-week tenure, and 150 hours of overtime cleaning stalls during the November 1, 2019 to October 11, 2020 Second Term (49 weeks x 3 hours/week + 3 additional hours to account for last weekend of work), for a total of 214 hours of unpaid overtime.

## II.   CONCLUSIONS OF LAW

1. As noted above, the parties do not dispute that the FLSA, MWHL and MWPCL apply to Hamzah's operations during the relevant period. The FLSA and the MWHL require employers to pay their employees a minimum hourly wage and an overtime rate when employees work more than 40 hours in a week. 29 U.S.C. §§ 206(a)(1); 207(a)(1); MD. CODE ANN., LAB. & EMPL. §§ 3-413, 415. "Claims under the FLSA and the MWHL can be analyzed together. This is because '[t]he requirements under the MWHL mirror those of the federal law.'" *Gaither v. Davi Transp. Servs., LLC*, No. 18-cv-1447-ELH, 2020 WL 2614783, at *4 (D. Md. May 22, 2020) (quoting *Turner v. Human Genome Scis., Inc.*, 292 F. Supp. 738, 744 (D. Md. 2003); citing *Friolo v. Frankel*, 373 Md. 501, 513 (2003)).

2. The FLSA specifies that, except as otherwise provided by 29 U.S.C. § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a

rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

3. A plaintiff carries the burden of proof in an FLSA claim for overtime wages. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946) *superseded by statute on other grounds as stated in Carter v. Pan. Canal Co.*, 463 F.2d 1289, 1293–94 (D.C. Cir. 1972). But "[t]his burden is light, especially when the employer's records are inaccurate or inadequate." *Randolph v. Powercomm Constr., Inc.*, 309 F.R.D. 349, 362–63 (D. Md. 2015). In such circumstances, the employee must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens Pottery Co.*, 328 U.S. at 687. If the employee does so, the employer has the burden to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id*. at 687–88.

4. Applying this standard in its Findings of Fact, *supra*, the Court has already found that Plaintiff worked 64 hours of overtime assisting with deliveries (32 weeks x 2 hours/week) during his 64-week total tenure, and 150 hours of additional overtime for cleaning stalls during his Second Term (49 weeks x 3 hours/week + 3 additional hours to account for last weekend of work), for a total of 214 hours of overtime. The Court therefore finds that Defendant violated the FLSA and MWHL.

5. Pursuant to 29 U.S.C. § 255, there exists a two-year (2) statute of limitations on a claim for unpaid overtime compensation under the FLSA unless the cause of action arises out of a willful violation, in which case, the statute of limitations is three (3) years from when the cause of action accrues.

6. Given the Defendants' failure to keep adequate records, Defendants' failure to produce records in their possession that could well have provided at least circumstantial evidence of the hours Plaintiff worked, and Defendant Rababeh's testimony that Plaintiff's flat rate would not increase to account for overtime even though he likely worked overtime on some occasions, the Court concludes that Defendants' actions constitute a willful violation for which the three (3) year statute of limitations applies. 29 U.S.C. § 255(a). Therefore, the First Term and Second Term both fall within the statute of limitations applicable to this case, and Plaintiff is entitled to payment for the full 214 hours of overtime worked. The Court also notes as a practical matter, the MWHL has a three-year (3) statute of limitations, such that, given Defendants' liability under both the FLSA and MWHL, Defendants are subject to the same timeframe. *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-101.

7. Having already found that Plaintiff worked 214 overtime hours combined during his First and Second Terms, the Court needs to calculate an appropriate award. As a general rule, the FLSA provides that an employee is entitled to one and one-half times the employee's "regular rate" for all hours in excess of forty hours. *See* 29 U.S.C.A. § 207(a)(1); *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1267 (4th Cir. 1996).

8. The employee's "regular rate" is the hourly rate that the employer pays the employee for the normal, non-overtime, forty-hour workweek. *See Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S. Ct. 1242, 89 L. Ed. 1705 (1945). However, where, as here, the employer pays an employee on a weekly salary basis, a Court determines the employee's regular hourly rate of pay by dividing the weekly salary by the number of hours that the employer intends the weekly salary to compensate. *See* 29 C.F.R. § 778.113; *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1268 (11th Cir. 2008).

9. In the case *sub judice*, witness testimony established that Plaintiff's weekly pay of $600 per week for the First Term was intended to compensate him for up to 40 hours per week, for an hourly rate of $15/hour ($600/40 hours) and an overtime rate of $22.50/hour ($15 x 1.5). Further, the parties' stipulation that Plaintiff was paid $750 per week during his Second Term, intending to compensate him for up to 40 hours/week for his work during regulated operations, and the testimony from Defendants that Plaintiff was paid an additional $100/week for weekend work cleaning out animal stalls, which the Court concluded amounted to an additional three hours per week, establish an hourly rate of $19.76/week ($850/43 hours) and an overtime rate of $29.64 ($19.76 x 1.5) for Plaintiff's Second Term.

10. Using these overtime rates, for his overtime work during his First Term, Plaintiff is entitled to $360 (8 weeks x 2hours. x $22.50) in overtime related to assisting with deliveries. For his Second Term, Plaintiff is entitled to $1422.72 (24 weeks x 2 hours x $29.64) in overtime related to assisting with deliveries. Additionally, Plaintiff is entitled to more overtime for the three hours/week he was spending cleaning animal stalls during his Second Term. However, as noted above, Plaintiff's regular rate during his Second Term contemplated 43 hours/week. Thus, unlike his time spent assisting with deliveries, Plaintiff has already been partially compensated for the three hours spent cleaning stalls by receiving his regular rate of pay for these additional three hours. As such, Plaintiff is only entitled to an award of the difference between his regular rate ($19.76) and his overtime rate ($29.64) for these three hours/week, or $9.88/hour. Thus, Plaintiff is entitled to an additional award of $1,482 (150 hours x $9.88) for overtime related to cleaning stalls that occurred in the Second Term. Plaintiff's total overtime award therefore is $3,264.72.

11. The FLSA provides that an employer who violates the Act shall be liable to the affected employee in the amount of their unpaid wages and "in an additional equal amount as

liquidated damages." 29 U.S.C. § 216(b). "Under the FLSA, there is a presumption in favor of liquidated damages against employers who violate the statute." *Rogers v. Savings First Mortg., LLC*, 362 F. Supp. 2d 624, 637 (D. Md. 2005). However, under 29 U.S.C. § 260 of the Portal–to–Portal Pay Act, a court may, in its discretion, reduce or eliminate an award of liquidated damages if the employer shows that the "act or omission giving rise to [the FLSA] action was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." The employer has the "plain and substantial burden" of persuading the court that the "failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir.1997) (citations and internal quotation marks omitted); *see also* 29 C.F.R. § 790.22(a)–(b). "This burden is a difficult one to meet . . . and [d]ouble damages are the norm, single damages the exception." *Rogers*, 362 F. Supp. 2d at 638 (citation and internal quotation marks omitted).

    12. As this Court has recently reiterated, mere assumptions of the law do not amount to good faith or show that an employer reasonably believed it was in compliance with the FLSA. *Salazar v. R.A.W. Tree Expert*, ELH 19-2039, 2020 WL 13249612 at *2 (D. Md. Nov. 10, 2020) (citations omitted). Further, ignorance or uncertainty of the law does not support a finding of good faith. *See Lockwood v. Prince George's Cty.*, 58 F. Supp. 2d 651, 658 (D. Md. 1999) *aff'd*, 217 F.3d 839 (4th Cir. 2000). Rather, an employer must "take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Id.* (quoting *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). Defendants offered no evidence of such steps. Additionally, given the Defendants' failure to maintain adequate records, Defendant Rababeh's admission that Plaintiff would be paid the same even when he worked overtime, and Defendants'

failure to produce records in their possession that would provide additional evidence of the hours Plaintiff worked, the Court concludes that Defendants have not carried their burden, and an award of liquidated damages is appropriate under the FLSA. The Court will address below whether, alternatively, Plaintiff is entitled to treble damages under the MWPCL.

        13. The MWPCL provides that if an employer fails to pay an employee as required and two weeks have elapsed from the date on which the employer is required to have paid the wages, the court may award the employee an amount not exceeding three times the wage, and reasonable counsel fees and other costs if such failure was not the result of a bona fide dispute. MD. CODE ANN., LAB. & EMPL. § 3-507.2(b). The Court finds that Defendants violated the MWPCL. Although it is true that, when asked shortly after his firing what he was due, Plaintiff indicated $850, Plaintiff was unrepresented and unaware of his rights to overtime at that point, and he therefore cannot be said to have waived his statutory rights. "Congress enacted the FLSA to 'protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce.'" *Johnson v. CRC Holding, Inc.*, No. JKB-16-2937, 2017 WL 914998, at *2 (D. Md. Mar. 7, 2017) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). The FLSA guarantees payment of overtime wages. 29 U.S.C. § 207(a)(1). Generally, "[t]he right to wage protections under the FLSA is not . . . negotiable without approval by a court or by the Department of Labor. . . . [T]he pertinent Maryland statutes are similarly non-waivable." *Johnson*, 2017 WL 914998, at *2. Allowing employees to waive their FLSA rights "would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)).

14. A plaintiff may be "entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both." *Quiroz v. Wilhelp Com. Builders, Inc.*, No. 10-cv-2016-WGC, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011). "Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Clancy v. Skyline Grill, LLC*, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012) (quoting *Lopez v. Lawns R Us*, No. DKC 07-2979, 2008 WL 2227353, at *4 (D. Md. May 23, 2008)).

15. For reasons similar to those which led the Court to find that FLSA liquidated damages are appropriate, the Court does not find that Defendants withheld the overtime due to Plaintiff because of a bona fide dispute. That said, it has become customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL, when the "defendants '[do] not offer any evidence of a bona fide dispute' to make liquidated damages inappropriate, [but the] plaintiffs '[do] not offer any evidence of consequential damages suffered because of the underpayments.'" *Clancy*, 2012 WL 5409733, at *8 (quoting *Lopez*, 2008 WL 2227353, at *4); *see also Castillo v. D&P Prof. Servs., Inc.*, 2015 WL 4068531, at *6–*7 (D. Md. July 2, 2015); 2012 WL 1899417, at *3 (D. Md. May 23, 2012); *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 800 (D. Md. 2010).

16. Because Plaintiff offered no evidence of consequential damages suffered because of the underpayments, and the under payments are not of an amount that would, by themselves, suggest that such damages would have been incurred, the Court does not find that treble damages under the MWPCL are appropriate and will instead award liquidated damages under the FLSA.

17. Based on the above, Plaintiff is hereby awarded $6,529.44 in total damages for unpaid overtime, including liquidated damages under the FLSA ($3,264.72 x 2).

18. The Court will defer its award of attorneys fees and costs until Defendants respond to Plaintiff's fee petition.  Such response is due within fifteen (15) days of the date of this Opinion and Order.

                                                                                /s/
                                          J. Mark Coulson
                                          United States Magistrate Judge
                                          Date: October 28, 2022