IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSE BONILLA FIALLOS**, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: 1:20-cv-03577-JMC |
| **HAMZAH SLAUGHTER HOUSE, LLC** et al, | | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION ADDRESSING
ATTORNEYS' FEES AND COSTS**

This Court has previously found in favor of Plaintiff in this wage and hour case. (ECF No. 70 & 71). Section 216(b) of the Fair Labor Standards Act expressly provides that "in addition to any judgment awarded to the plaintiff or plaintiffs," the Court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Court addresses that express provision in detail below.

**I.   Legal Standard**

In calculating an award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended[.]" *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008). "To ascertain what is reasonable in terms of hours expended and the rate charged, the Court is bound to apply the factors set forth in *Johnson v. Geogria Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (other citation omitted). The *Johnson* factors, as characterized by the Fourth Circuit in *McAfee*, include:

> (1) [T]he time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Corral v. Montgomery Cnty.*, 91 F. Supp. 3d 702, 712–13 (D. Md. 2015) (citing *McAfee*, 738 F.3d at 88 n.5). Next, courts "subtract fees for hours spent on unsuccessful claims unrelated to successful ones . . . [and finally] award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quoting *Johnson*, 488 F.2d at 244).

As the Fourth Circuit's discussion in *McAfee* illustrates, courts have been less than consistent in determining whether the *Johnson* factors "inform the calculation of the lodestar," whether they instead should be used to make "upward or downward adjustments to it," or whether they should serve "both purposes." *McAfee*, 738 F.3d at 89. Without determining which, if any, approach is correct, the Fourth Circuit noted with approval that determination of the lodestar multipliers often subsumes consideration of many of the *Johnson* factors. *Id.* at 89–90. When considering the total number of hours expended, the Court generally considers factors one, two, and seven. In assessing the reasonableness of the rates charged per hour, factors three, four, five, six, nine, eleven, and twelve are potentially relevant.

  II.  Analysis

    **A.  Compliance with Local Rules**

As a preliminary matter, Defendants argue that Plaintiff's failure to comply with the Court's Local Rules regarding formatting and providing quarterly fee statements undermines

Plaintiff's attorneys' fees request. (ECF No. 72 at pp. 8–9)[1]. The Court disagrees. It is true that the Court has a preferred format for the presentation of fee petitions to assist the Court in assessing time entries. Loc. R. Appendix B at 1(b) (D. Md. 2021). This preference exists primarily to assist the Court and opposing counsel in assessing the total number of hours expended. Here, however, Defendants raise only one challenge to the total number of hours expended (discussed below). Further, given the relatively few hours expended, the lack of formatting did not interfere with the Court's ability to assess the litigation tasks.

As for quarterly statements (Loc. R. Appendix B at 1(c) (D. Md. 2021)), while the failure to submit such statements "may" result in a denial or reduction of fees, the Court has discretion in that regard. Defendants have not pointed to any prejudice they suffered by a failure of Plaintiff to adhere to this rule. Additionally, Defendants themselves did not request such statements, which is a condition precedent to seeking denial of a fee petition on that basis. Loc. R. Appendix B at 1(c)* (D. Md. 2021) (noting that "[o]pposing counsel may not seek a denial or reduction of fees from the court if he/she did not first request that such statements be provided.").

### B.  Total Number of Hours Expended

With one exception related to their counterclaim, Defendants do not argue that the total number of hours expended was excessive. The Court agrees. This matter followed the entire litigation timeline from client intake and investigation through trial, to include post-trial briefing. The total number of hours expended was approximately 125. The Court finds that number to be reasonable, especially given some of the complexity involved in the interplay between the Fair Labor Standards Act and its Maryland counterparts.[2]

---

[1] Pincites refer to the page numbers provided within the electronic filing stamps at the top of the filings.

[2] Defendants did not argue for a reduction in hours based on Plaintiff's partially unsuccessful Motion for Summary Judgment and to Dismiss. (ECF No. 37). The Court notes that the filing of the motion led to Defendants' voluntary

As for Defendants' argument that any time spent by Plaintiff in responding to Defendants' counterclaim should be deducted, the Court disagrees for two reasons. First, Defendants' counterclaim arose from a confrontation between Plaintiff and his employer regarding wages due and owing, such that it was intimately related to the underlying allegations in the case. It could have a chilling effect on wage and hour plaintiffs if fees involved in defending against an employer's counterclaim could not be recovered by a successful plaintiff. This is true especially where, as here, that counterclaim was later abandoned. Second, there is no reasonable way for the Court to parse efforts directed towards defending against that counterclaim versus efforts supporting Plaintiff's underlying claim, notwithstanding Defendants' invitation to do so based on their own "formula" by which they primarily rely upon using the number of docket entries occurring during the time the counterclaim was pending relative to the total number of docket entries to allocate fees to defending this counterclaim. (ECF No. 72 at pp. 10–11). Moreover, Defendants' assertion regarding the amount of discovery centering on the counterclaim is specifically contradicted by Plaintiff. (ECF No. 73 at pp. 4–5).

### C. Reasonable Hourly Rate

A court's first task in determining an appropriate rate is to look to the prevailing markets in the relevant community. *Prusin v. Canton's Pearls*, *LLC*, No. JKB-16-0605, 2019 WL 4438609, at *3 (D. Md. Mar. 12, 2019). "The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which

---

withdrawal of its Counterclaim. Given that the motion was only partially unsuccessful and that its filing led to the withdrawal of a significant counterclaim, and that the Court lacks information to allocate the approximately eight (8) total hours expended to different arguments raised, the Court will not *sua sponte* reduce the hours expended on the motion.

counsel can command in the market." *Spell v. McDaniel* 824 F.2d 1380, 1402 (4th Cir. 1987); *see also E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 724 F.3d 561, 572 (4th Cir. 2013) (noting an attorneys' prior fee awards may serve as a "barometer" of the prevailing market rate).

Here, Plaintiff points the Court to three potential resources to assess the reasonableness of counsels' hourly rate: the United States Attorneys' Office Matrix, the Laffey Matrix, and Appendix B of this Court's Local Rules. (ECF No. 72 at pp. 7–8). Mr. Hyman, with more than twenty years of experience, seeks a rate of $565/hour, while Mr. Addie-Carter, with approximately five years of experience, seeks a rate of $375/hour.

The Laffey Matrix suggests that it represents "rates for attorneys practicing federal litigation in the District of Columbia." LAFFEY MATRIX, *Case Law*, http://www.laffeymatrix.com/caselaw.html (last visited Nov. 10, 2022). The United States Attorneys' Office Matrix purports to include hourly rates for all types of lawyers in the DC Metro Area. *Id.* Appendix B to this Court's Local Rules are ranges of presumptively reasonable hourly rates charged by attorneys practicing in this Court. *Jahn v. Tiffin Holdings, Inc,* No. SAG-18-1782, 2020 WL 4436375, at *6 (D. Md. Aug. 3, 2020). While "the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges." *Gonzales v. Caron,* No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).

Though often included as one metroplex, Washington, DC and Baltimore are distinct from each other in terms of prevailing market rates for legal services. Further, Plaintiff has not supplied information regarding prevailing rates in wage and hour cases that were pending in this Court. Though this Court has not done an exhaustive search, it appears to be the custom of this Court to look to its own guidelines in such cases, especially in the absence of specific information justifying

a departure from those guidelines. *Prusin*, *supra*, 2019 WL 4438609, at *3–4. The Court also notes that the hourly rates sought are in excess to those approved in many recent wage and hour cases. *See, e.g., Jahn* and *Prusin, supra*. Accordingly, the Court will use its top hourly rate of $475 based on Mr. Hyman's years of experience and particular expertise in wage and hour matters, and an hourly rate of $275 for Mr. Addie-Carter, based on his five years of experience. *See* Loc. R. Appendix B at 3(b) and 3(e).

Applying the adjusted rates to the time expended leads to a preliminary lodestar amount of $20,235 for Mr. Hyman ($475 x 42.6 hours), $21,835 for Mr. Addie-Carter ($275 x 79.4 hours), and $412.50 in paralegal time ($125 x 3.3 hours). The sum of these three amounts provides a preliminary total of $42,482.50 in attorneys' fees. The Court will address potential reduction of this amount based on "degree of success" immediately below

### D. Degree of Success

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). While quantifying success is "challenging," courts nonetheless "*must* compare the amount of damages sought to the amount awarded." *Randolph v. PowerComm Constr., Inc.,* 780 F. App'x 16, 23 (4th Cir. 2019) (quoting *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (emphasis supplied by *Randolph*)).

That said, in FLSA and other civil rights cases, the Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages . . ." actually recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). Such cases often involve "vulnerable plaintiffs" who "may be vindicating important rights that entitle them to relatively modest compensation[,]" *Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639, at *4

(D. Md. June 8, 2015), and a rule requiring proportionality "would 'seriously undermine Congress' purpose' and prevents victims who frequently cannot pay counsel at market rates from effective access to the justice system." *Salinas v. Comm. Interiors, Inc.*, No. 8:12-cv-1973-PWG, 2018 WL 2752553, at *3 (D. Md. June 8, 2018) (quoting *Rivera*, 477 U.S. at 576). Situations regularly arise where the amount sought in fees is outsized in comparison to the recovery. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006).

That said, the Court must also ensure that a fee award does not "produce a windfall to attorneys." *Butler v. Directsat USA, LLC*, No. CV DKC-10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016). In *Randolph*, the Fourth Circuit found that a trial court abused its discretion by *failing* to reduce the lodestar amount where settling plaintiffs "received only 38% of their claimed unpaid overtime wages," or "only 6% of the damages sought at the outset of litigation." *Randolph*, 780 F. App'x. at 24 (remanding with instructions for a 25% reduction). Courts in this District have also reduced lodestar amounts in FLSA cases for similar reasons. *See, e.g.*, *Sakala v. Milunga,* No. PWG-16-0790, 2018 WL 5724010, at *9–12 (D. Md. Oct. 31, 2018) (reducing the $91,804.17 lodestar amount by 20%, because the amount that the plaintiff recovered was "less than half" of what she originally sought in her wage and hour claims, and a "small fraction" of what she sought for an unrelated claim that she withdrew two weeks prior to trial); *Chapman v. Ourisman Chevrolet Co., Inc.*, No. AW-08-2545, 2011 WL 2651867, at *17–18 (D. Md. July 1, 2011) (reducing the lodestar amount by 25% because the two settling plaintiffs each sought $5,291.91 in damages under the FLSA but recovered "less than fifty percent and fifteen percent respectively"); *Almendarez v. J.T.T. Enters. Corp.,* No. JKS-06-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010) (reducing the $84,058.00 lodestar amount by 25% because the jury found that four plaintiffs were properly compensated for overtime pay, and that of the

three who were not, they were each entitled to only $1,600, $600, and $1,100, rendering their victory "close to purely technical").

In making its lodestar determination, this Court "has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so." *McAfee*, 738 F.3d at 90–91 (quoting *Thomas v. Nat'l Football League Players Ass'n*, 273 F.3d 1124, 1130 n.9 (D.C. Cir. 2001)) (other citations omitted). In *Clark v. Sims*, the Fourth Circuit held that a trial court abused its discretion in reducing an attorneys' fees award based on the prevailing party's rejection of a prior settlement offer because that settlement offer did not constitute an "offer of judgment" under Fed. R. Civ. P. 68. *Clark v. Sims*, 28 F.3d 420, 423–24 (4th Cir. 1994). The court positively cited to *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992) for the notion that a court's attorneys' fees analysis "must be guided by the principle that mere settlement negotiations may not be given the effect of a formal offer of judgment." *Clark*, 28 F.3d at 424. In *Ortiz*, the Second Circuit observed that, generally, a failure to settle a case should not lead a court to reduce an attorneys' fees award absent bad faith on the prevailing party's behalf. *Id.* at 141 (citation omitted).

In the present case, Plaintiff sought $54,679.65 in base overtime pay, equating to $109,359.30 if liquidated under the FLSA, or up to $164,038.95 if trebled under the Maryland Wage Payment Collection Law. (ECF No. 67 at pp. 20 & 23). By contrast, Plaintiff was awarded $6,529.44 in total damages. (ECF No. 70 at p. 16). Defendants argue that Plaintiff's ultimate recovery was only 3.98% of the amount demanded in Plaintiff's proposed findings of fact and conclusions of law, and that Plaintiff's fee request should be similarly reduced.[3] (ECF No. 72 at 11). Plaintiff also contrasts the amount ultimately awarded by the Court with the Plaintiff's last settlement offer to make a similar argument.

---

[3] Defendants also point to Plaintiff's calculation in his first demand and his calculation as part of his summary judgment briefing, which result in even smaller percentages. (ECF No. 72 at p. 11).

As pointed out above, it is not unusual in wage and hour cases to have attorneys' fees significantly in excess to the amount recovered. Defendants have not pointed the Court to authority that calls for reducing a preliminary lodestar calculation by the same percentage that the underlying award bears to the amount sought. The Court has cited the caselaw to the contrary above. Furthermore, as previously discussed, there is nothing in the total hours expended that suggest inefficiency or a motive to increase fees, also counseling against the kind of reduction suggested by Defendants. Nonetheless, some reduction is appropriate. Accordingly, the Court will reduce the lodestar calculation by 25% to account for this difference. The final fee award is therefore $31,861.88 ($42,482.50 x 25% = $10,620.62; $42,482.50 - $10,620.62 = $31,861.88).

### E.  Litigation Costs

Defendants challenge one area of litigation costs: the amount Plaintiff incurred for securing Spanish language interpreters for trial, especially in comparison to what local state courts pay for such services. (ECF No. 72 at pp. 12–14). However, Plaintiff correctly points out that the reimbursement rate negotiated by a particular court does not set the "market rate" for private litigants. (ECF No. 73 at pp. 9–10). Plaintiff has also provided ample support that these costs were actually incurred and paid. (ECF No. 73-4). Thus, Plaintiff is not marking up or otherwise seeking a windfall; Plaintiff is simply seeking reimbursement for the amount expended on a third-party vendor in the business of providing such services.

Accordingly, the Court awards litigation costs in the additional amount of $8,412.59 as attested to by Plaintiff's counsel. (ECF No. 67-4 at p. 1).

### F.  Post-Judgment Interest

Under the post-judgment statute, post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Specifically, such

interest is awarded from the "date of the entry of judgment[.]" *Id.* The appropriate "date of entry of judgment" is oftentimes contested. *See, e.g.*, *Fryer v. A.S.A.P. Fire & Safety Corp., Inc.*, 758 F. Supp. 2d 29, 33 (D. Mass. Dec. 15, 2010), *aff'd*, 658 F.3d 85 (1st Cir. 2011) ("A circuit split exists as to whether postjudgment interest on an attorneys' fee award runs from the date of the merits judgment or the date of the quantum judgment. . . . Courts in this district calculate fees from the date of the merits judgment.") (other citations omitted). In the absence of binding precedent, this Court declines to award post-judgment interest from October 28, 2022 (the date of the final judgment as to the merits of the claim).

In this Court's view, until the entry of this memorandum opinion and accompanying order, the appropriate decision regarding fees remained hotly contested, unresolved, and clearly unascertainable. *See Vandevender v. Blue Ridge*, 756 Fed. App'x. 230, 232 (4th Cir. 2018) ("[T]hese rulings are based on the principle that postjudgment interest should run from the time the amount of the judgment was 'ascertainable in a meaningful sense.'"); *Powell v. Carey Int'l Inc.*, 548 F. Supp. 2d 1351 (S.D. Fla. 2008) (holding employees were entitled to interest only from date that cost judgment was entered, rather than the date the final judgments issued). In the circumstances presented here (an action pursuant to Section 216(b) of the FLSA wherein attorneys' fees and such are to be assessed separately), the determination of attorneys' fees was clearly an open and contested matter. Accordingly, I shall award post-judgment interest, if any, from a date fifteen (15) days after the date of entry of this memorandum opinion and order.

### III. Conclusion

Accordingly, this Court enters an attorneys' fee award of $31,861.88, together with costs of $8,412.59. A separate order shall follow.

Date: November 14, 2022                              /s/
                                                  J. Mark Coulson
                                                  United States Magistrate Judge